UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALERIE KOGER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>COSTCO WHOLESALE CORPORATION, et al.,<br><br>  Defendants. | Case No. 3:20-cv-08759-JD<br><br>**ORDER RE RULE 702 MOTIONS** |

This order resolves the parties' motions to exclude expert testimony, Dkt. Nos. 36, 37, 39, 40, 41, 43. The Court will address parties' *motions in limine*, including Dkt. Nos. 42 and 44, at the pre-trial conference set for January 18, 2024. Dkt. No. 31. The parties' familiarity with the record is assumed.

## I.   LEGAL STANDARDS

Federal Rule of Evidence 702 governs the admissibility of expert witnesses. The touchstones for admissibility under Rule 702 are the relevance and reliability of the expert witness's opinions. The Court performs a "gatekeeping role" to ensure that expert witness opinions are valid and reliable, and will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590-91, 597 (1993) (quoting Rule 702).

The reliability factor looks at "whether the reasoning or methodology underlying the testimony is scientifically valid" and "whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. This is a flexible inquiry. *See Brickman v. Fitbit, Inc.*, Case No. 3:15-cv-02077-JD, 2017 WL 6209307, at *3 (N.D. Cal. Dec. 8, 2017) (citing *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017)). Relevant factors include: "(1)

whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Id.* (quoting *Murray*, 870 F.3d at 922). These factors "are not a definitive checklist or test" and "the reliability analysis remains a malleable one tied to the facts of each case." *Id.* (quoting *Murray*, 870 F.3d at 922).

As the Court has often emphasized, Rule 702 is not directed to "the correctness of the expert's conclusions but the soundness of his methodology." *Brickman*, 2017 WL 6209307, at *4 (quoting *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert II*), 43 F.3d 1311, 1318 (9th Cir. 1995)). If the method is valid and accepted in the field, and fits the case, it will be admitted; attacks on the quality of the data the expert used, the application of the methodology to the data, and the overall persuasiveness of the expert's opinions are matters for cross-examination. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237-38 (9th Cir. 2017) (citing *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) and *Daubert*, 509 U.S. at 596). The "district judge is a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9th Cir. 2010) (internal quotation and citation omitted).

The Court has broad discretion and latitude to determine admissibility under Rule 702. *Estate of Barabin*, 740 F.3d at 463. No particular procedure is required. *Id.*

## II.   PLAINTIFFS' MOTIONS

### A.   Jon B. Ver Halen (Dkt. No. 36)

Plaintiffs seek to exclude Ver Halen's report because (1) he did not consider all relevant evidence; (2) his first opinion is based on inadmissible SGS testing; and (3) his first, second, and fourth opinions are based on independent testing employing unreliable methodology. Plaintiffs also object to defendants' late-disclosed reliance on new materials attached to their opposition brief. Dkt. No. 36, 55 at 2.

Rule 702(d) requires an expert's opinion to "reflect[] a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. Although experts must base their opinions on "sufficient facts and data," they are not required to review the totality of case materials. *Id.* Ver Halen's reliance on photographs, video, plaintiffs' and defendants' discovery

2

responses, and defendants' document production constitutes "sufficient facts and data" for him to form an opinion. Dkt. No. 36-1, Ex. 15, at 1. His testimony will not be excluded simply because he did not consider materials that plaintiffs believe to be relevant.

Even so, Ver Halen's opinions with respect to SGS testing are excluded. Although Rule 703 permits experts to rely on inadmissible evidence, including hearsay, it "does not allow the admission of the reports to establish the truth of what they assert." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1262 (9th Cir. 1984). Ver Halen merely recites the conclusions of the SGS tests without further discussion of their data or methodology. Experts are not permitted to repackage inadmissible hearsay as expert testimony.

Plaintiffs' challenge of Ver Halen's testing methods is well taken. An expert's methods may be deemed reliable if the expert employed a scientific theory or technique, if the methods have been subjected to peer review and publication, if there is a known or potential error rate, or if the method has been generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593-94. Where the expert's conclusions were not subject to ordinary scientific scrutiny, the expert may instead show the validity of their theory by explaining "'precisely how [he] went about reaching their conclusions.'" *Domingo v. T.K.*, 289 F.3d 600, 605 (9th Cir. 2002) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995)). But expert testimony relying on undisclosed or poorly described methodology must be excluded, because opinions based on "unsubstantiated and undocumented information is the antithesis of . . . scientifically reliable expert opinion." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998). In essence, an expert's methods must be testable so that the conclusions can be independently validated.

Ver Halen's report, which is less than four pages long from start to finish, lacks any details sufficient to reproduce his results or otherwise fairly evaluate his conclusions. Dkt. No. 36-1, Ex. 15. He found his exemplar chair "in our lunchroom" where "[i]t was in regular use." *Id.* at 2. The chair "was opened and folded a few cycles," leading him to conclude "the front leg brackets would only be subjected to the nominal force of the leg weight and momentum, at most a few pounds." *Id.* These tidbits are far from enough to establish reliability to any degree, let alone

1  enough to pass review Rule 702.  His method for testing the coefficient of friction (COF) might
2  present enough detail to be reproduced, but the results of that test are, like all the other tests he
3  conducted, based on an exemplar chair of questionable origin.  Defendants say Ver Halen's testing
4  is scientifically rigorous, and that his tests complied with the principles of physics, BIFMA
5  standards, and, rather puzzlingly, "sound economic methodologies."  Dkt. No. 46 at 56.  But other
6  than the COF tests, Ver Halen's report fails to discuss any physics, BIFMA, or other concepts on
7  which he relied.  Ver Halen will not be permitted to opine on either SGS testing or his independent
8  testing.

9  At trial, Ver Halen may not introduce new evidence or new arguments not previously
10 disclosed or relied upon in his expert report.  Introducing additional evidence at this late stage of
11 litigation would deprive plaintiffs of the opportunity to depose experts or prepare cross-exams and
12 rebuttals.

### B.     Eric J. Drabkin (Dkt. No. 37)

Experts may not reduce any "estimations, measures, or calculation of past, present, or future damages for lost earnings or impaired earning capacity resulting from personal injury or wrongful death" based on "race, ethnicity, or gender."  Cal. Civ. Code § 3361.  Plaintiffs point to Dr. Drabkin's reliance on Craig A. Allen's article, "Labor Force Transitions by Gender: Implications for Separate and Combined Worklife Expectancy" as evidence that he based his estimation of plaintiff Koger's lost earnings on unlawful, gender-based evidence.  Dkt. No. 37 at 1.

Despite the title of the article, the underlying data on which Drabkin relied does not make gender-based predictions.  *See* Dkt. No. 37-1, Ex. 3, Table 1.  It provides weighted averages based on age and educational attainment only.  *Id.*  Plaintiffs cite the article's analysis of Table 1's as demonstrating otherwise, because the author said the results "do[] not equalize average worklife expectancy between men and women across the population."  *Id.* at 25.  But plaintiffs' selective quotation is misleading and wholly misunderstands the paper's statistical reasoning.  The article applied the gender-agnostic estimates in Table 1 to the male and female populations.  Those estimates, as applied to existing populations, yielded slightly lower worklife expectancies for

4

women, on average. *Id.* These distinctions were entirely attributable to differences in education levels and workforce participation between men and women. *Id.* But the underlying, gender-agnostic estimates in Table 1 would not reduce any damage estimates based on plaintiff Koger's gender alone. Plaintiffs' request to exclude Dr. Drabkin's opinions is denied.

### C. Stephen D. Forner (Dkt. No. 39)

Plaintiffs ask to bar Dr. Forner from suggesting alternative explanations for Koger's symptoms. Forner's expert report concluded that Koger likely did not suffer a traumatic brain injury as a result of the subject accident, suggesting instead that functional neurologic disorder (FND) or benign paroxysmal positional vertigo (BPPV) may partially explain some of her symptoms. Dkt. No. 39-1, Exs. 6, 7. Forner did not expressly diagnose Koger with FND or BPPV. He suggested that even though they did "not explain all of the other symptoms that Ms. Koger reports," they "should be considered" as a partial explanation. Dkt. No. 39-1, Ex. 7, at 5.

Plaintiffs take issue with Forner's reluctance to affirmatively diagnose Koger with FND or BPPV. Dkt. No. 39 at 5-6. But plaintiffs did not identify a binding or persuasive case to the effect that, when a clinician rejects a diagnosis, he or she must proffer an alternate diagnosis. Forner's reluctance to diagnose seems perfectly reasonable. In some instances, he lacked "records or any further information" on a key neurological evaluation; in other instances, tests were performed but no results were made available. Dkt. No. 39-1, Ex. 6, at 53-54. Given the incomplete medical record, his degree of confidence in his assessment of Koger's condition is appropriate.

Plaintiffs' request to seal Exhibits 2, 4, and 5 in defendants' response, Dkt. No. 48, is granted. These exhibits contain Koger's sensitive medical records and discuss her medical history and should have been filed under seal. Defendants are cautioned to avoid such errors in the future, and may be sanctioned if it happens again.

### III. DEFENDANTS' MOTIONS

### A. Zachary M. Moore (Dkt. No. 40)

Defendants seek to exclude Moore from presenting legal conclusions as expert opinion. "Experts 'interpret and analyze factual evidence. They do not testify about the law.'" *United States v. Brodie*, 858 F.2d 492, 496 (9th Cir. 1988) (quoting *United States v. Curtis*, 782 F.2d 593,

599) (6th Cir. 1986)). Consequently, legal opinions are not the proper subject of expert testimony. *Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017). An expert may not give opinions that are legal conclusions, *United States v. Tamman*, 782 F.3d 543, 552-53 (9th Cir. 2015), or attempt to advise the jury on the law, *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046-47 (9th Cir. 2013).

Moore's first opinion, that the chair was unsafe at the time of the incident, is presented in effect as an unadorned legal conclusion. Moore is not an expert in product design or consumer safety, and may not testify that "the subject chair was in an unsafe condition at the time of plaintiff's accident" or that Koger was "acting in a reasonable and foreseeable manner." Dkt. No. 40-1, Ex. 1, at 4.

Moore's second opinion, that the subject location violated codes and industry standards, is also improper for different reasons. Experts may testify about industry conditions, standards, and practices, so long as they do not proffer legal conclusions that "invade[] the province" of the fact finder. *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008). Moore will not be permitted to stray into that territory. The specific problem for Moore is that his references to industry standards are not adequately supported. He devoted just one paragraph to them, and the only standard he mentions is drawn from language in an insurance company manual. Dkt. No. 40-1, Ex. 1, at 4. He offers no further analysis in support of his testimony about industry standards. This opinion may not presented at trial.

Moore's third opinion, that Costco either knew or should have known of the unsafe condition, is based on a sounder factual and methodological footing. Moore analyzed employee testimony, Costco's inspection policies, and an inspection sheet to determine that Costco's employees had failed to comply with its own policies. *Id.* at 5. Costco says that Moore is not qualified, and his opinion is presented as a legal conclusion. But Moore's background and credentials suggest he has expertise in the safety of premises, which would bear on his conclusions here. *Id.* at 1. Consequently, his testimony in support of his third opinion will be permitted to the extent that it hews to the facts and does not veer into purely legal conclusions.

Moore's fourth opinion, that the cost to eliminate the unsafe condition would have been minimal, is excluded. He says that Costco "could have implemented and followed an adequate

1    inspection policy," *id.* at 6, but presents no analysis or support for what this policy would have

2    involved, or how he would have estimated the costs of implementing the policy.

### B.    Leonard J. Backer (Dkt. No. 41)

Defendants seek to exclude some of Backer's opinions on grounds that he is unqualified to opine on Costco's failure to properly inspect the store premises, or alternatively that those opinions are impermissible legal conclusions. Dkt. No. 41 at 6-7.

Backer's expertise is in the design, manufacture, and sale of chairs. Dkt. No. 41-1, Ex. A. He claims to have expertise in "retail store planning markets" which includes "visual merchandising" as it relates to chairs, but the record does not demonstrate that he has any experience in premises safety or the inspection and risk management standards applicable to retail stores. Backer's report offers opinions on Costco's responsibility to maintain the safety of its premises and its inspection and remedial procedures. Dkt. No. 41-1, Ex. B, at 12-14. These issues little to do with chairs or any other topics within his field of expertise. Backer will not be permitted to testify on Costco's safety or inspection procedures.

### C.    Mark D'Esposito (Dkt. No. 43)

VOMS tests are designed to diagnose concussions sustained during athletic events. Defendants ask to exclude Dr. D'Esposito from testifying altogether because he performed a VOMS test on Koger. Dkt. No. 43. Plaintiffs object to this characterization of D'Esposito's medical examination, saying that he did not perform a VOMS test, but even so, a VOMS test would have been properly utilized. Dkt. No. 52 at 2.

D'Esposito says he performed a comprehensive review of Koger's medical records, including conducting a "full neurological exam that included at least seven neurological tests." Dkt. No. 52 at 2-3. Although some of these tests are also performed during a VOMS screening, these tests are also associated with neurologic tests outside the context of athletic events. *Id.* at 3-4. There is no reason to believe that tests performed in the VOMS context are valid only in that context.

Even if D'Esposito had performed a VOMS test on Koger, this would not be grounds for exclusion. Defendants acknowledge that the method itself is used to diagnose certain head

injuries, Dkt. No. 43 at 4-5, which means it falls outside of the "junk science" category excluded by Rule 702. *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014). Whether or not these testing methods were appropriate for Koger's specific facts and circumstances is grist for cross examination, not grounds for exclusion.

**IT IS SO ORDERED.**

Dated: November 27, 2023

JAMES DONATO
United States District Judge